# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
### CASE NO. 16-80915-CIV-MARRA

CHUNXUE WANG,

Plaintiff,

vs.

FLORIDA ATLANTIC UNIVERSITY BOARD OF
TRUSTEES, JOHN W. KELLY, PH.D., VALERIE J.
BRISTOR, PH.D., ROBERT SHOCKLEY, and
MICHELE HAWKINS,

Defendants.

_____/

## OPINION AND ORDER

THIS CAUSE is before the Court on Defendants' Motion to Dismiss Counts I, II, V, and

VI of the Amended Complaint and for Dismissal of Defendant John W. Kelly as a party to the

action. [Dkt. 19.]  The Court has carefully considered the motion, response and reply, and it

otherwise fully advised in the premises.  For the reasons explained below, the Court grants

Defendants' Motion to Dismiss.  The Court further provides Plaintiff with an opportunity to

amend his Amended Complaint as to Count V.

In the Amended Complaint, Plaintiff Chunxue Wang ("Plaintiff" or "Wang," who also

goes by the name "Victor C.X. Wang" [Dkt. 17,  5]) sues Florida Atlantic University ("FAU"), a

state university, and four of its senior officials for claims related to his alleged unlawful

compensation, suspension, and ultimate discharge from employment at FAU.  The four officials

that Wang names in his Amended Complaint are: (1) John W. Kelly, Ph.D., in his official

capacity as President of FAU; (2) Valerie J. Bristor, Ph.D., Dean of FAU's College of Education;

(3) Robert Shockley, Ph.D., Chair of FAU's Department of Educational Leadership and Research

Methodology ("ELRM"); and (4) Michele W. Hawkins, Ph.D., who was an Associate Provost at the time of Plaintiff's discharge but is now FAU's Vice Provost.  [Dkt. 17,  13-16; 21, 47; see Dkt. 19 n. 2 (updating Hawkins's position for the Court).]

As relevant to the Defendants' Motion to Dismiss, Wang seeks relief against FAU pursuant to the Florida Civil Rights Act ("FCRA") (Counts I and II), and relief against Defendants FAU, Bristor, Shockley, and Hawkins pursuant to 42 U.S.C. § 1983 (Counts V and VI).  FAU has not sought to dismiss Wang's claims against FAU pursuant to Title VII of the Civil Rights Act of 1964 (Counts III and IV).

**I.  Background**

As recounted in the Amended Complaint, Wang is a Chinese citizen and permanent resident of the United States.  [Dkt. 17, ¶ 19.]  He joined the faculty of FAU in 2011 as a tenured Professor in FAU's College of Education, and was terminated on or about May 24, 2016.  [*Id.*, ¶¶ 20-21, 47.]

Beginning in August 2014, FAU began to receive anonymous emails which contained discriminatory statements regarding the age and sexual orientation of certain FAU faculty members and complaints regarding salary inequity between senior and newly hired faculty members.[1]  [*Id.*, ¶ 25; Dkt. 19-2 at 00003-00004.]  The author of these anonymous emails

---

[1] While the Court generally does not consider anything beyond the face of the complaint and the documents attached thereto in analyzing a motion to dismiss, the Eleventh Circuit has recognized an "exception . . . in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss."  *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).  Because the parties do not dispute that the documents Defendants have attached to their Motion to Dismiss—including, for example, FAU's investigative report regarding the anonymous emails [Dkt. 19-2], and correspondence between FAU and Plaintiff regarding his employment [Dkt. 19-3, 19-4, 19-5, 19-6, 19-7, 19-8, 19-9]—are referred to in

consistently referred to him/herself as "Mr. Joe" or "B Russel," [Dkt. 19-2 at 00004], and

Wang's Amended Complaint alleges that these emails originated from a computer located in

Indonesia.  [Dkt. 17, ¶ 25.]

On April 2, 2015, FAU's Office of Equity, Inclusion, and Compliance ("EIC")

commenced an investigation into these emails.  EIC did so on the basis of faculty members'

complaints that the emails were "deliberately malicious, anonymous and attempted to smear

many faculty member's personal and professional reputations by describing a litany of

unsubstantiated and untrue accusations about the ELRM (Department of Educational Leadership

and Research Methodology)."  [Dkt. 19-2 at 00005.]  FAU's investigation involved interviews

with approximately 23 individuals and culminated in a published, written investigative report.

[*Id.* at 00004.]  The investigative report details that, "[d]uring the course of the investigation,"

the "EIC met with a number of faculty members who believed Dr. Victor Wang is involved in the

anonymous emails."  [*Id.* at 00005.]  The report notes that the faculty members connected Dr.

Wang with the emails because of "reference[s] [to] a number of issues raised by Dr. Wang in

personal communication which were also mentioned in the anonymous emails."  [*Id.*]  For

example, the investigative report notes that "[o]n more than one occasion, Dr. Wang called

members of the ELRM at home or on their cellphones to complain about his salary . . . In his

verbal communications, Dr. Wang cited the fact that a number of faculty members were paid

more than him but produced less scholarly work."  [*Id.*]  Similarly, one of the "priority issues"

raised in the anonymous emails was "pay equity allegations of lower salaries for newly hired

faculty as opposed to the higher alleged salaries for senior faculty."  [*Id.* at 00004.]  In addition,

---

Plaintiff's Amended Complaint, are central to Plaintiff's claims, and their content is not in
dispute, this Court properly considers them in evaluating Defendants' Motion to Dismiss.

the report explains that "Administrators who were interviewed also stated the language used in

the anonymous email was very similar to language used by Dr. Wang.  Specifically, Dr. Wang

routinely used phrases referring to the power of particular leadership and praising them for

making changes."  [*Id.* at 00005.]

Based on the EIC's review of both interview testimony and documentation—including

"personal and work related emails, and other documents submitted to EIC" regarding Wang—the

report concluded that a preponderance of the evidence supports the conclusion that "it is more

likely than not Dr. Wang was the author or at least involved in the anonymous emails sent to

various members of the University community that contained discriminatory remarks."  [*Id.* at

00007.]  One example of this cited in the investigative report is that, "[i]n an email to the Dean of

the [College of Education], Dr. Wang references two faculty members voting against him for

tenure.  In the email, Dr. Wang refers to them as 'extremely senior' faculty members referring to

Bogotch and Pisapia."  [*Id.* at 00006.]  "In one of the anonymous emails," likewise, "the sender

refers to the ages of both faculty members mentioned in the email to the Dean, stating they

should retire."  [*Id.*]  As another example correlating the anonymous emails to Dr. Wang, the

report states:

> In a personal email sent to another faculty member on April, 6, 2015, Dr. Wang
> stated "most students enjoy working with regular faculty.  I had a horrible time,
> working with those gays and lesbians in CA.  I don't mind working with them, but
> don't like them introducing their partners to colleagues and students . . . And their
> sex life is so filthy."  In the anonymous emails, the sender states that "in Florida
> you cannot allow people with any particular sexual orientation to be "role models"
> to educate and train the next generation of workforce in higher education or
> related fields.  You already have one and you don't need more from the same
> place.  It's called Iowa.  This new faculty already has expressed his disdain at the
> ranking and status of FAU as a research university at several faculty meetings.
> Why hire people of this kind?" (April 6, 2015).

4

[*Id.*]  Considering the evidence presented by the investigation, the report concludes that "Dr. Wang and the sender (1) used similar language, (2) repeatedly made reference to salary inequities in the ELRM, (3) both cited the same erroneous salary figures in the emails and the EIC complaint, (4) both cited the same erroneous ages in emails and the EIC complaint, (5) both cited issues with the ages of various faculty members in the ELRM, and (6) both referenced having issues with working with individuals of particular sexual orientations."  [*Id.*]  "Further," the report adds, the "EIC received information from an individual who stated the same thing occurred at another University when Dr. Wang was a member of the faculty."  [*Id.*]  A copy of the investigative report was sent to the Dean of the College of Education and the Vice Provost for follow-up, [*id.*], and Wang contested the finding of the report by letter on July 28, 2015 [Dkt. 19-3].  On August 28, 2015, FAU sent Wang a notice of proposed disciplinary action, referencing Wang's "written response to the EIC report," but noting that in his response he "admitt[ed] to sending the email and making the discriminatory statements" based on sexual orientation.  [Dkt. 19-4.]  FAU therefore provided notice to Wang that it was suspending him for five days without pay and required him to attend an Anti-Discrimination/Anti-Harassment workshop.  [*Id.*]

Wang's Amended Complaint asserts that he "did not have anything to do with the emails," and that "FAU's conclusion that Wang sent the emails or knew who sent the emails was discriminatory."  [Dkt. 17, ¶¶ 27, 30.]  "FAU concluded that since Wang was Asian, and 'Joe' is from an Asian country," Wang alleges, "then it was either Wang who sent the emails or someone that he knows from Indonesia."  [*Id.*, ¶ 28.]  He adds that "FAU reached this conclusion because other professors at FAU opined that the dialect used by Wang and the dialect used in the anonymous emails is similar, essentially that Asians sound similar."  [*Id.*, ¶ 29.]

5

Wang also asserts that he "learned that he was being paid considerably less than all of the other non-Chinese tenured professors," noting that he sent a letter on March 12, 2015, "complaining about his pay disparity" and alleging that "Wang earned approximately nineteen thousand dollars, ($19,000.00), less than the next lowest paid tenured Professor."  [*Id.* ¶¶ 37-38, 40.]  The March 12, 2015 letter includes a statement noting that Wang "fail[s] to see why Dr. Laanan, a newly hired Asian faculty, came in at $35,307 above [his] current salary."  [Dkt. 19-1 at 00029.]

Based on Wang's "objection to the false accusations regarding the anonymous emails, and the complaint about the pay disparity," the Amended Complaint alleges that "Wang was subjected to relentless acts of retaliation by FAU."  [Dkt. 17, ¶ 41.]  These retaliatory acts, as alleged in the Amended Complaint, included a "recent evaluation for Wang as a 'C,'" a "proposed disciplinary action of a 5 day suspension without pay," and the requirement that he "attend workshops"[1] and "apologize to professors for sending emails that he did not send."  [Id., ¶¶ 42-44.]  Wang alleges that these "new acts of bigotry and discrimination further harmed Wang."  [Id. ¶ 45.]

Wang received a letter from FAU on May 24, 2016, terminating his employment at FAU.  [Dkt. 19-9.]  On June 3, 2016, Wang filed this case.

## II.  Legal Standard

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

---

[1] The "workshops" that Wang refers to are "Anti-Discrimination/Anti-Harassment" workshops, as referenced in the FAU's letter to Wang on August 28, 2015.  [Dkt. 19-4.]

6

8(a)(2).  Although a complaint "does not need detailed factual allegations," it must provide

"more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (explaining Rule 8(a)(2)'s pleading standard "demands more than an

unadorned, the defendant-unlawfully-harmed-me accusation").  In the same vein, a complaint

may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S.

at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).  "Factual allegations must be

enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

These elements are required to survive a motion brought under Rule 12(b)(6) of the Federal

Rules of Civil Procedure, which requests dismissal for "failure to state a claim upon which relief

can be granted."

    When reviewing a motion under Rule 12(b)(6) a court, as a general rule, must accept the

plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in

favor of the plaintiff.  *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration

Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp.,

LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009).  However, this tenet does not apply to legal

conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual

allegation."  *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty.

Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).  Moreover, "courts may infer from the

factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful

conduct rather than the unlawful conduct the plaintiff would ask the court to infer."  *Am. Dental.

Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim.  *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity."  (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir, 2002)).

A motion to dismiss for lack of subject matter jurisdiction brought pursuant to Federal Rule of Civil Procedure 12(b)(1) may present either a facial or a factual challenge to the complaint. *See McElmurray v. Consol. Gov't*, 501 F.3d 1244, 1251 (11th Cir. 2007). A factual attack "challenge [s] 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings ... are considered.' " *See McElmurray*, 501 F.3d at 1251 (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). If the defendant challenges the factual predicate of subject matter jurisdiction, this Court may then go beyond the allegations of the complaint, without converting the motion to dismiss to a summary judgment proceeding, and consider evidence to determine if there are facts to support the jurisdictional allegations.  Fed. R. Civ. P. 12(b)(1); *Flournoy v. Govt. Nat'l Mortgage Assoc.*, 156 F. Supp. 3d 1375, 1378 (S.D. Fla. 2016); *McGee v. Cole*, 993 F. Supp. 2d 639 (S.D. W. Va. 2014).

**III. Discussion**

**A. Claims Against FAU (Counts I, II, and VI)**

Counts I and II of the Amended Complaint allege that FAU violated the FCRA, Fla. Stat.

§§ 760.01 et seq. by discriminating and retaliating against Wang based on his race and national

origin, and Count VI alleges that FAU violated 42 U.S.C. § 1983.  [Dkt. 17, ¶¶ 55-70, 92-113.]

FAU argues that these claims must be dismissed because this Court lacks subject matter

jurisdiction on the basis of FAU's Eleventh Amendment immunity.

The Eleventh Amendment precludes suits in federal court brought by a state's own

citizens, as well as by citizens of another state, for damages against a state, state agency, or

public official in their official capacity, unless Congress has either abrogated the state's

immunity or the state has expressly waived it.  *Pennhurst State Sch. Et Hosp. v. Halderman,* 465

U.S. 89, 100 (1984) (quoting *Employees v. Missouri Dep't of Public Health and Welfare,* 411

U.S. 279, 280 (1973)); *Miccosukee Tribe of Indians v. Florida State Ath. Comm'n,* 226 F.3d

1226, 1231 (11th Cir. 2000).  As a state university, FAU is an "arm of the state" that receives the

same Eleventh Amendment protection from suit in a federal court as the state itself.  *See*

*Schopler v. Bliss,* 903 F.2d 1373, 1378 (11th Cir. 1990) ("[T]he Eleventh Amendment extends to

state agencies and other arms of the state."); *see also Crisman v. Florida Atl. Univ. Bd. of*

*Trustees*, 572 F. App'x 946, 948 (11th Cir. 2014) (applying Eleventh Amendment immunity to

FAU as to plaintiff's ADEA claims); *Nettleman v. Florida Atl. Univ. Bd. of Trustees*, No. 16-

81339-CIV, 2017 WL 76958, at *3 (S.D. Fla. Jan. 6, 2017) ("There is no dispute that FAU is an

'arm of the state' that would otherwise qualify for sovereign immunity.").

States may consent to suit or otherwise waive their immunity under the Eleventh

Amendment, but only under certain narrow circumstances, and courts presume that states have

not waived their immunity. *Pennhurst,* 465 U.S. at 100–03. Here, the Florida legislature has

indicated that it did not intend to waive its immunity to FCRA actions brought in federal courts.

While the FCRA provides that "a civil action" may be brought "in any court of competent

jurisdiction," Fla. Stat. §760.11(4)(a), this language does not waive the state's immunity under

the Eleventh Amendment because "[a] state does not consent to suit in federal court merely by

stating its intention to sue and be sued, 'or even by authorizing suits against it *in any court of

competent jurisdiction*.'" *Crisman v. Florida Atl. Univ. Bd. of Trustees*, 572 F. App'x 946, 948

(11th Cir. 2014) (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527

U.S. 666, 676, 119 S.Ct. 2219, 2226, 144 L.Ed.2d 605 (1999) (emphasis added) (quoting

*Kennecott Copper Corp. v. State Tax Comm'n,* 327 U.S. 573, 575, 578–79 & n. 1, 66 S.Ct. 745,

746–48 & n. 1, 90 L.Ed. 862 (1946)) (internal quotation marks omitted))). Accordingly, Wang's

FCRA claims against FAU are barred by the grant of immunity under the Eleventh Amendment,

and this Court must dismiss Counts I and II of the Amended Complaint for lack of subject matter

jurisdiction. *See, e.g.*, *Bell-Babineaux v. Florida Dep't of Juvenile Justice*, No. 8:12-CV-2153-T-

17AEP, 2014 WL 281971, at *4 (M.D. Fla. Jan. 24, 2014) (dismissing FCRA claim on the basis

of Eleventh Amendment immunity); *Haynes v. State*, No. 97-6339-CIV-GOLD, 1998 WL

271462, at *1 (S.D. Fla. Jan. 26, 1998) (granting summary judgment in favor of defendant on

FCRA claims on the basis of Eleventh Amendment immunity) ("Plaintiff has not pointed to any

provision of the FCRA which reveals an explicit or definite waiver of immunity."); *Yeary v.

Florida Dep't of Corr.*, No. 95-0583-CIV-J-21-C, 1997 WL 284648, at *2 (M.D. Fla. May 13,

10

1997) ("Florida's waiver of its sovereign immunity to suit under the FCRA in its own courts, which may fairly be presumed from Section 760.11(4)(a), is not sufficiently express to also constitute a waiver of its Eleventh Amendment immunity.").

Like Counts I and II, FAU argues in the Motion to Dismiss that Count VI must be dismissed for lack of subject matter jurisdiction because Wang's claim is barred under the Eleventh Amendment. [Dkt. 19 at 6-7.] In Wang's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint, Wang "concedes that FAU should not be sued pursuant to 42 U.S.C. § 1983, and agrees to the dismissal of Count VI." [Dkt. 26 at 9.] Accordingly, this Court also dismisses Count VI of the Amended Complaint.

### B. Complaint Against Defendant John Kelly

Other than naming Kelly as a defendant [Dkt. 17 at 1] and stating, in the "Parties" section of the Amended Complaint, that Kelly, "the FAU President, is a person as defined by 42 U.S.C. § 1983" [Id. at ¶ 13], Wang states no claim against Defendant Kelly in his Amended Complaint. Wang does not explain any factual allegations involving Defendant Kelly, and he does not state that any of his legal claims are brought against Defendant Kelly. It is axiomatic that a complaint must " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Here, because Wang does not state any of his claims against Kelly, he has not provided Kelly with the required fair notice of Wang's claims against him. Accordingly, Wang must replead his allegations to include claims against Defendant Kelly or dismiss him as a party to this action. Wang has **ten days** from the entry of this Order to clarify whether Defendant Kelly is a party to

11

any of the claims brought by Plaintiff and to plead with particularity the grounds upon which those claims rest.

### C. Fourteenth Amendment Claim Against Individual Defendants (Count V)

Count V of the Amended Complaint alleges that the named FAU officials, Defendants Bristor, Shockley, and Hawkins, individually violated 42 U.S.C. § 1983 by depriving Wang of his property interest in a tenured faculty position and salary without due process of law as required under the Fourteenth Amendment.  [Dkt. 17, ¶¶ 89-95.]  Wang explains that Defendants Bristor, Shockley, and Hawkins violated procedural due process protections by not "(a) affording him proper notice or a hearing of any kind;  (b) conducting any investigation of 'just cause' (i.e. 'misconduct' or 'incompetence') for such adverse employment actions as is the specifically required finding of the same; (c) presenting any allegation or evidence of 'just cause' (i.e. 'misconduct' or 'incompetence') for such adverse employment action as is the specifically required finding of the same; (d) even defining or suggesting the meaning of 'just cause' (i.e. 'misconduct' or 'incompetence') for purposes of justifying such adverse employment actions." [Id. at ¶ 94.]

The Fourteenth Amendment guarantees that before the state can deprive a person of liberty or property, "the affected person must be forewarned and afforded an opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Zisser v. Fla. Bar,* 747 F.Supp.2d 1303, 1316–17 (M.D. Fla. 2010) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)).  The central protection of procedural due process, then, is "a guarantee of fair procedure." *Id.* (quoting *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)).

However, as the Eleventh Circuit explained in *McKinney v. Pate*, "only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise."  20 F.3d 1550, 1557 (11th Cir. 1994) (en banc); *see Cotton v. Jackson*, 216 F.3d 1328, 1330-31 (11th Cir. 2000) (citing *McKinney* and stating: "This rule (that a section 1983 claim is not stated unless inadequate state procedures exist to remedy an alleged procedural deprivation) recognizes that the state must have the opportunity to 'remedy the procedural failings of its subdivisions and agencies in the appropriate fora—agencies, review boards, and state courts' before being subjected to a claim alleging a procedural due process violation").  In *McKinney,* the Eleventh Circuit expressly found that Florida courts have review power over public employees' employment-termination cases, and that this encompasses resolution of public employees' procedural due process claims.  *McKinney,* 20 F.3d at 1563 (noting that Florida courts "possess broad powers of review" in this arena) (citing *City of Deerfield Beach v. Vaillant,* 419 So.2d 624, 626 (Fla. 1982)).

In accordance with the guidance of *McKinney*, Wang must plead that he either sought redress of his alleged procedural due process deprivation through, among other channels, the state-court system, or that the remedies afforded under state law are inadequate in order to survive Defendants' Motion to Dismiss.  As Defendants emphasize, though, Wang has not made any such showing that the state cannot provide an adequate state remedy to his perceived procedural due process violation, or that Wang availed himself of the state process through which those prospective remedies flow.

As Wang has failed to adequately allege a violation of 42 U.S.C. § 1983 by failing to show a denial of a constitutional right, it is premature for the Court to consider the defense of

13

qualified immunity proffered by Defendants. *See Wooten v. Campbell*, 49 F.3d 696, 699 (11th Cir. 1995) (the qualified immunity defense only applies if the complaint states a violation of a clearly established constitutional right). Accordingly, Count V is dismissed with leave to amend. Wang shall have until ten days from the entry of this judgment to replead this claim and provide the Court with he has sought state-court review and asserts that the state courts have also denied him procedural due process.

## IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss [Dkt. 19] is **GRANTED**.  **COUNT I**, **COUNT II**, and **COUNT VI** are **DISMISSED WITH PREJUDICE** for lack of subject-matter jurisdiction.  Plaintiff is **GRANTED LEAVE TO CLARIFY** with regard to any claims against **DEFENDANT JOHN W. KELLY**.  Further, **COUNT V** is **DISMISSED WITH LEAVE TO AMEND**.  Plaintiff shall have ten days from the entry of this order to replead as to **COUNT V and DEFENDANT JOHN W. KELLY ONLY**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 27th day of March, 2017.

_____
      KENNETH A. MARRA
      United States District Judge

14